RICK L. SHACKELFORD (SBN 151262)
*ShackelfordR@gtlaw.com*
DANIELL K. NEWMAN (SBN 242834)
*NewmanDK@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700
Fax: (310) 586-7800

Attorneys for Defendant,
OCEAN SPRAY CRANBERRIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOELLE MAJOR, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OCEAN SPRAY CRANBERRIES, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendant. | **Case No. CV12-03067 EJD (HRL)** <br><br> **DEFENDANT OCEAN SPRAY'S OPPOSITION TO MOTION TO CERTIFY CLASS** <br><br> Date:         May 24, 2013 <br> Time:         9:00 a.m. <br> Courtroom:   4, 5th Floor <br><br> Complaint Filed:   June 14, 2012 <br> Trial Date:         None Set |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 3

III.    ARGUMENT ....................................................................................................... 4

        A.    Plaintiff Bears The Burden To Prove The Requirements For Class Certification.............. 4

        B.    Plaintiff Has Failed To Prove That Common Issues Predominate Or That A Class
              Action Is A Superior Method Of Adjudication Of This Case. ........................................ 5

              1.    "Who" – Class Membership Cannot Be Established by Collective Evidence........ 6

              2.    "What" –  The Actual Products Purchased, and Their Label Contents, Cannot
                    Be Established by Collective Evidence. .............................................................. 9

              3.    "When" – The Timing of Purchases Cannot Be Shown by Collective
                    Evidence.............................................................................................................. 11

              4.    "Where" – The Location of Purchases Cannot Be Shown By Collective
                    Evidence.............................................................................................................. 12

              5.    "Why" – Materiality and Reliance Cannot Be Shown By Collective Evidence... 12

        C.    Questions of Restitution and Damages are also Subject to Individualized Inquiry and
              Cannot be Established by Representative Evidence. ......................................................... 16

        D.    Plaintiff Has Provided No Trial Plan And Fails To Demonstrate How This Case Could
              Be Tried On Collective Evidence. .................................................................................... 21

        E.    Plaintiff Has Not Demonstrated The Superiority Of Trying The Case As A Class
              Action. ............................................................................................................................... 23

        F.    Plaintiff Is Neither "Typical" Nor "Adequate" As Class Representative......................... 23

        G.    Plaintiff's Alternative Proposal of Rule 23(b)(2) Certification Fails Where She
              Predominantly Seeks Monetary Relief. ............................................................................ 24

IV.     CONCLUSION.................................................................................................... 25

DEFENDANT OCEAN SPRAY CRANBERRIES, OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Badella v. Deniro Marketing LLC*
   2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) ........................................................... 6, 21

*Bridge v. Phoenix Bond & Indemnity Co.*
   553 U.S. 639 (2008).............................................................................................. 20

*Brown v. Kelly*
   609 F.3d 467 (2d Cir. 2010)..................................................................................... 8

*Campion v. Old Republic Home Protection Co.*
   272 F.R.D. 517 (S.D. Cal. 2011) .......................................................................... 16

*Chavez v. Blue Sky Natural Bev. Co.*
   268 F.R.D. 365 (N.D. Cal. 2010) ....................................................................... 7, 8

*Comcast v. Behrend*
   133 S. Ct. 1426 (2013)................................................................................... 18, 21

*Cruz v. Dollar Tree Stores, Inc.*
   2009 WL 1458032 (N.D. Cal. May 26, 2009) ........................................................ 6

*Cummings v. Connell*
   402 F.3d 936 (9th Cir. 2005) ................................................................................ 23

*Edwards v. Ford Motor Co.*
   2012 WL 2866424 (S.D. Cal. June 12, 2012).......................................................... 22

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974)............................................................................................ 23

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) ............................................................................. 4, 5

*Espenscheid v. DirectSat USA, LLC*
   705 F.3d 770 (7th Cir. 2013) ................................................................................ 18

*Fine v. Conagra Foods, Inc.*
   2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) ........................................................ 23

*Gen. Tel. Co. of Sw. v. Falcon*
   457 U.S. 147 (1982).............................................................................................. 5

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992) ................................................................................ 24

*Harris v. Vector Mktg. Corp.*
   753 F. Supp. 2d 996 (N.D. Cal. 2010) ............................................................. 22, 23

*Haskell v. Time, Inc.*
   965 F. Supp. 1398 (E.D. Cal. 1997)....................................................................... 14

*Heighly v. JC Penney Life Ins. Co.*
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) .................................................................. 14

ii

*Howard v. Gap, Inc.*
   2009 WL 3571984 (N.D. Cal. Oct. 29, 2009)........................................................8

*In re Facebook, Inc. PPC Advertising Litig.*
   282 F.R.D. 446 (N.D. Cal. 2012)........................................................15

*In re Google Adwords*
   2012 WL 28068 (N.D. Cal. Jan. 5, 2012)........................................................22

*In re GPU Antitrust Litig.*
   253 F.R.D. 478 (N.D. Cal. 2008)........................................................20

*In re Hydrogen Peroxide*
   552 F.3d 305 (2008)........................................................20

*In re IPO*
   471 F.3d 24 (2d Cir. 2006)........................................................8

*In Re Paxil Litigation*
   218 F.R.D. 242 (C.D. Cal. 2003)........................................................25

*In re Phenylpropanolamine (PPA) Products Liab. Litig.*
   214 F.R.D. 614 (W.D. Wash. 2003) ........................................................23

*In re Visa Check/MasterMoney Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001)........................................................8

*Johnson v. General Mills*
   276 F.R.D. 519 (C.D. Cal. 2011)........................................................11

*Johnson v. Harley-Davidson Motor Co.*
   285 F.R.D. 573 (E.D. Cal. 2012)........................................................6, 11

*Jones v. Conagra Foods, Inc.*
   2012 WL 6569393 (N.D. Cal. Dec. 17, 2012)........................................................11

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ........................................................6

*Kotteras v. Whole Foods Market, Inc.*
   281 F.R.D. 16 (D.D.C. 2012)........................................................9, 19

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*
   211 F.R.D. 228 (S.D.N.Y. 2002)........................................................24

*M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty.*
   286 F.R.D. 510 (S.D. Ala. 2012)........................................................25

*Mahfood v. QVC, Inc.*
   2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) ........................................................8, 24

*Mason v. Coca-Cola Co.*
   774 F. Supp. 2d 699 (D.N.J. 2011)........................................................17

*Mazur v. eBay, Inc.*
   257 F.R.D. 563 (N.D. Cal. 2009)........................................................23

*Mazza v. American Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012)........................................................22

*McLaughlin v. American Tobacco Co.*
    522 F.3d 215 (2nd Cir. 2008)...............................................................passim

*Newton v. Merrill Lynch, Pierce, Fenner and Smith*
    259 F.3d. 154 (3d Cir. 2001)...................................................................... 20

*O'Shea v. Epson Am., Inc.*
    2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ........................................ 22

*Ries v. Arizona Bev. USA LLC*
    2013 WL ____, No. 10-01139-RS (N.D. Cal. March 28, 2013) .............. 14

*Rutledge v. Electric Hose & Rubber Co.*
    511 F.2d 668 (9th Cir. 1975) ...................................................................... 6

*Sokol v. New United Mfg., Inc.*
    1999 WL 1136683 (N.D. Cal. Sept. 20, 1999) ........................................ 25

*Solo v. Baush & Lomb Inc.*
    2009 WL 4287706 (D.S.C. Sept. 25, 2009)................................................ 7

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) .............................................................. 6, 21

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) .................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011)........................................................................passim

*Webb v. Carter's Inc.*
    272 F.R.D. 489 (C.D. Cal. 2011) .............................................................. 16

*Weiner v. Snapple Beverage Corp.*
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .................................. 8, 18, 21

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009) .............................................................. 24

*Wilcox Development Co. v. First Interstate Bank Oregon, N.A.*
    97 F.R.D. 440 (D. Ore. 1983) .................................................................. 24

*Windham v. Am. Brands, Inc.*
    565 F.2d 59 (4th Cir. 1977) ...................................................................... 20

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ............................................................ 23, 24

*Zeisel v. Diamond Foods, Inc.*
    2011 WL 2221113 (N.D. Cal. 2011) ...................................................... 7, 8

**State Cases**

*Akkerman v. Mecta Corp.*
    152 Cal.App.4th 1094 (2007) .................................................................. 15

*Cohen v. DirecTV*
    178 Cal. App. 4th 966 (2009) .................................................................. 16

iv

*Colgan v. Leatherman Tool Group, Inc.*
    135 Cal. App. 4th 663 (2006) .................................................................. 22

*In re Steroid Hormone Prod. Cases*
    181 Cal. App. 4th 145 (2010) .................................................................. 17

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*
    178 Cal. App. 4th 830 (2009) ............................................................ 15, 16

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal.4th 1134 (2003) .......................................................................... 22

*Peterson v. Cellco Partnership*
    164 Cal.App.4th 1583 (2008) ................................................................ 16

*Pfizer, Inc., v. Superior Court*
    182 Cal. App. 4th 622 (2010) ................................................................ 16

*Sevidal v. Target Corp.*
    189 Cal. App. 4th 905 (2010) ................................................................ 16

**Federal Statutes**

21 C.F.R. § 101.60(c)(2)(v) ........................................................................ 13

**State Statutes**

California Business & Professions Code, Section 17200 .............................. 25

California Business & Professions Code, Section 17208 .............................. 12

California Civil Code, Section 1783 ............................................................ 12

California Code of Civil Procedure, Section 335 ........................................ 12

**Federal Rules**

Federal Rules of Civil Procedure, Rule 23 .......................................... passim

Federal Rules of Civil Procedure, Rule 23(a) ........................................... 4, 5

Federal Rules of Civil Procedure, Rule 23(b) ............................................... 4

Federal Rules of Civil Procedure, Rule 23(b)(2) .................................... 24, 25

Federal Rules of Civil Procedure, Rule 23(b)(3) ................................... passim

Federal Rules of Civil Procedure, Rule 23(b)(3)(D) .................................... 23

Federal Rules of Civil Procedure, Rule 9(b) ........................................... 6, 11

**Other Authorities**

7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1785.2 (3d ed.) ............................ 25

**Slip Op.**

*Brazil v. Dole Food Company, Inc.*
    CV 12-01831-LHK, Dkt. 59 (N.D. Cal. Mar. 25, 2013) ......................... 11

DEFENDANT OCEAN SPRAY CRANBERRIES, OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

*Khasin v. The Hershey Co.*
  No. 5:12-CV-01862, Dkt. 45 (N.D. Cal. Nov. 9, 2012) ................................................ 10
*Wilson and Campen v. Frito-Lay North America, Inc.*
  CV 12-1586-SC, Dkt. 46 (N.D. Cal. Apr. 1, 2013) .................................................... 11

DEFENDANT OCEAN SPRAY CRANBERRIES, OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a).

2. Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(2).

3. Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

DEFENDANT OCEAN SPRAY CRANBERRIES, OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

# I.   **INTRODUCTION**

Any consumer in a supermarket is confronted with thousands of options.  Any given consumer's purchasing decisions will be informed by numerous data points, all of which are unique to that consumer on that occasion.  "What do I have at home?"  "What does my family like?"  "What is my budget?"  "What is on sale?"  "Can I get this cheaper somewhere else?"  As the answers change, purchasing decisions change.  The weight given those factors differs from consumer to consumer and from time to time.  Once the purchase is completed, the individual consumer is effectively anonymous, and the thought process behind the purchase is, in most instances, forgotten.

Those realities of shopping for food in retail stores align very poorly with the requirements of Fed. Rule Civ. Proc. 23 for certifying a class who have in common, at most, two things:  (i) they bought a product in question at least once in the last 4 years; and (ii) that product, for parts of that time period, had a label that was more or less the same.  It is not enough, however, to show that one or two common issues might ***exist***; the common issues must ***predominate***.  Furthermore, Rule 23 requires that predominant common issues be capable of proof by collective evidence, and a class action be superior to individual actions, meaning the Court must consider how Plaintiff's claims could be tried.

Plaintiff's attempt to make these showings cannot withstand the rigorous analysis required to certify a Rule 23(b)(3) class for monetary relief.  Common questions do not predominate, as the factual situations, claims and defenses of the purported class members vary greatly.  Furthermore, fatal problems of typicality, commonality and adequacy of representation exist throughout.  Plaintiff's Motion falls short in all of the following respects:

- **Common Issues Do Not Predominate:**  Every purchaser was presented with a different set of available products and possible alternatives to the Ocean Spray products they chose.  The prices consumers paid varied widely, as did the prices of alternative products. [1]  Many alternative products had the same label issues Plaintiff complains about on Ocean Spray products.  Any common questions are

---

[1] Even Plaintiff's would-be damages expert, Dr. Capps, recognizes this fact.  His declaration notes that SKU scanner data will show the "register price for any SKU sold by the Defendant in any given store on any given day . . ." [Capps Decl., at 4:2-3.]  But those data do not provide any information about who actually purchased the product, nor the substitute products, if any, available in that same store on the same day, or prices on a different day, or prices in any other store in California on any day.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

overwhelmingly outweighed by the individual circumstances of each purchase and purchaser.

• **Ascertainability:** There can be no cohesive, ascertainable class comprised of anonymous retail purchasers of any of the products at issue. There is no objective source of information to identify individual purchasers. The most basic issue in the case – i.e., Who is a purchaser? – cannot be shown by collective evidence. Rather, class membership could only be established by affirmative evidence, be it a sales receipt, authorized proof of purchase from a label, or sworn testimony. This is all individualized proof. Ocean Spray has a due process right to challenge every proponent of that proof.

• **Remedies:** The nub of Plaintiff's claim is that the challenged aspects of Ocean Spray's labels allowed it to fetch a premium above the price for its products if "properly" labeled. A price premium is simple enough to allege, but devilishly hard to prove. A "premium" price necessarily requires a comparison among two or more things. In this case, those things would be Ocean Spray's challenged products compared to some available, properly-labeled (according to Plaintiff) substitute products. Just what those substitute products might be and what price they sold for necessarily varied by time, by retailer, by location, and other transaction-specific details, not one of which can be demonstrated by collective proof.

• **Trial Plan:** Plaintiff must explain how a trial could afford due process to absentee class members as well as to Ocean Spray. In proper class actions, the bulk of the case is proven by collective evidence. But there is no such evidence in this case. Instead, there would necessarily have to be a lengthy series of mini-trials that would be indistinguishable from having individual parties come forward and prove their claims on their own.

• **Adequate Representative:** A class representative must be typical of the class she seeks to represent, and the named plaintiff cannot be subject to unique defenses. Ms. Major falls short in that respect. The challenged label elements did not drive her purchasing decisions; price and calorie content did. When she learned of Ocean Spray's alleged labeling infractions, she stopped buying those products and bought others instead. However, in many instances, the replacement products had labels with the very same kind of infractions she complains of on the Ocean Spray labels. Thus, there is a substantial defense to causation based upon Ms. Major's admitted purchase behavior.

In short, this putative class should not be certified. Plaintiff's motion must be denied.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

## II.   **STATEMENT OF FACTS**

The sole plaintiff, Noelle Major, is a married, middle-aged mother of two sons.  As alleged in her complaint, she bought 5 different Ocean Spray products.  Complaint, Dkt. #1, at pp. 38-47.  Two of them (Ocean Spray Diet Sparkling Pomegranate Blueberry drink and Ocean Spray Light Cranberry drink) she purchased only once each. [Declaration of Daniell K. Newman, Ex. A, Major Deposition at 48:7-12; 59:21-60:3].  She was attracted to those products for two reasons:  she was watching her weight (which made the reduced calorie aspect appealing) and she wanted to try new flavors.  [*Id*. at 50:17-51:6; 52:8-16; 60:9-22; 62:19-23].  She decided she did not like them and never bought them again. [*Id*. at 51:7-13; 63:2-20].  She did not claim to have been drawn to them thinking they were "all natural."

Ms. Major also bought two juice cocktails for her family:  Ocean Spray Ruby-Cherry Cocktail and Ocean Spray Blueberry Juice Cocktail.  She bought these products because she and her family liked the taste.  [*Id*. at 68:7-69:2; 73:2-5; 80:10-12, 20-25].  She served them to her family members and guests without complaint or reservation.  [*Id*. at 72:4-73:2; 73:8-11; 76:6-10; 81:1-9, 20-23; 92:7-19].  But she harbored no illusion that the less than 100% juice products delivered all of the attributes of whole fruit.  [*Id*. at 86:4-87:4; 87:15-22].

Finally, Ms. Major bought Ocean Spray 100% Juice Cranberry and Pomegranate Flavored juice blend.  [*Id*. at 94:24-95:6].  She also may have bought Ocean Spray 100% Juice Cranberry Flavored blend, but she could not be sure.  [*Id*. at 95:10-96:7].  She bought 100% Juice products because she liked to serve them to her children, so they got more fruit than from other products.  [*Id*. at 100:16-101:8; 108:13-16].  She also liked that they contained no added sugar, which she understood to mean the only sugar in the product came naturally from the fruit.[2]  [*Id*. at 102:23-103:6].  She had no illusion whatsoever that the 100% Juice products were reduced calorie offerings.  [*Id*. at 108:3-12].

Ms. Major retained no receipts for her purchases of Ocean Spray beverages, so the best she has to go on is her memory of how often she bought the products, where she bought them, and how much she paid.  However, she was quite certain that she did not pay any premium price for Ocean Spray

---

[2] Her belief in this regard is correct.  Ocean Spray's discovery responses in this case establish that the 100% Juice blends are made from fruit juice concentrates and the amount of water necessary to dilute those concentrates to their respective federally-mandated Brix levels. [Newman Decl., Exh. O at p.4].

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

products because when comparing two similar products, she chose the one with the lower price, and if the lower price was a private label store brand, she purchased it instead of Ocean Spray.  [*Id*. at 137:16-138:1; 139:8-141:16].

Notably, her only source of information about alleged deficiencies in Ocean Spray labels is her counsel.  [*Id*. at 73:16-76:1; 103:19-104:3].  Ms. Major pays no more attention to food labels now than she did before lending her name to this lawsuit.  [*Id*. at 133:23-134:4].  Indeed, her purchasing behavior bears that out.  Among the products she buys instead of Ocean Spray, many of them have the same "no sugar added" and "no artificial" content messaging she complains about here.  *Id*. at 27:5-22; 28:3-29:3; 128:13-129:8; 130:10-17; Exhs. D-N].  Her testimony and purchasing behavior demonstrate that the challenged label elements did not drive her purchasing decisions, and as a shopper who went for the lowest priced items, the labels certainly did not lead her to pay any premium for Ocean Spray products.[3]

### III.   ARGUMENT

#### A.   Plaintiff Bears The Burden To Prove The Requirements For Class Certification.

Plaintiff bears the burden of identifying an ascertainable and permissibly defined class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Plaintiff also bears the burden of showing that the proposed class would satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a):  numerosity, commonality, typicality, and adequacy.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979--80 (9th Cir. 2011).  If Plaintiff meets these prerequisites, the Court must then decide whether the class action is maintainable under Rule 23(b).  Here, Plaintiff invokes Rule 23(b)(3), which authorizes certification only when "questions of law or fact common to class members predominate over any questions affecting only individual members," *and* when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Dukes* made clear that a class representative must do more than merely allege compliance with Rule 23.  She must actually demonstrate that the case may properly be ***tried*** on a class-wide basis

---

[3] In this sense, Ms. Major behaved like Dr. Capps' "rational consumer."  Her testimony makes it clear that finding an actual, lower priced, properly labeled comparable product is the linchpin for any economic loss claim by Ms. Major.  Dr. Capps has identified no such product, and as the accompanying Newman Declaration shows, products on store shelves during the class period, as well as some Plaintiff buys today, have the same label issues.  Dr. Capps failed to identify any appropriate substitute product and offered no evidence that a valid substitute exists or has ever existed.

consistent with Rule 23 and due process. *See* 131 S. Ct. 2541 (2011). A court may not simply accept the Plaintiff's allegations as true, but must carefully consider whether the disposition of the class representative's claims may be applied across the class. In *Dukes*, the Supreme Court held that the long-required "rigorous analysis," may prompt the court "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 131 S. Ct. at 2551 (citation omitted). Indeed, "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (emphasis in original).

Despite Plaintiff's contention that Rule 23(a) is to be liberally construed, "actual, not presumed conformance with Rule 23(a) remains. . .indispensable." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Plaintiff devotes much of her argument to clearing the comparatively low bar created by Rule 23(a). Ocean Spray does not contest numerosity. The other three requirements are contested. As to commonality, Plaintiff focuses on limited elements of Ocean Spray's label, as if the labels were all that had to be proven. The issues on the Plaintiff's side of the case are not common from purchaser to purchaser, or retailer to retailer, or from time to time. One fact alone illustrates the point: retailers, not Ocean Spray, establish retail prices, and the retail price is the most important part of any label. The only thing in "common" about the price is that everyone paid one, but certainly not the same one. Typicality is not established, because Ms. Major was not deceived or misled by any of the challenged label elements. And Ms. Major is not an adequate representative. She knows nothing about this case or any labeling issues apart from what class counsel told her. She still does not pay any attention to labels, and she buys non-Ocean Spray products that have the same label issues. Thus, Plaintiff fails even the more relaxed inquiry under Rule 23(a). However, Plaintiff's showing is so deficient by Rule 23(b)(3) standards, the bulk of this opposition is devoted to those shortcomings.

**B.**   **Plaintiff Has Failed To Prove That Common Issues Predominate Or That A Class Action Is A Superior Method Of Adjudication Of This Case.**

Rule 23(b)(3) requires that common issues "predominate" over individual issues and that proceeding as a class action be "superior to other methods for fairly and efficiently adjudicating the

controversy."  Rule 23(b)(3) predominance is "far more demanding" than (a)(3) commonality.  *Cruz v. Dollar Tree Stores, Inc.,* 2009 WL 1458032, at *7 (N.D. Cal. May 26, 2009).  Because "no precise test can determine whether common issues predominate, the Court must ***pragmatically*** assess the entire action and the issue involved," *Badella v. Deniro Marketing LLC,* 2011 WL 5358400, at *6 (N.D. Cal. Nov. 4, 2011) (emphasis added), to determine whether the issues can be proven class-wide through generalized evidence or whether individual proof will be needed to establish each class member's entitlement to relief.  *See, e.g., Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1024 (9th Cir. 2011) (affirming decision not to certify class that included consumers who were not misled); *Johnson v. Harley-Davidson Motor Co.,* 285 F.R.D. 573, 582 (E.D. Cal. 2012) (predominance not satisfied where individualized proof needed to resolve multiple issues, including materiality).  If Plaintiff fails to satisfy even one prerequisite, class certification must be denied.  *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

A "pragmatic" way of looking at whether common issues predominate is to examine the particularity with which Plaintiff's claims must be pled in order to satisfy Rule 9(b), then examine whether those facts could be proven by collective evidence.[4]  "Averments of fraud must be accompanied by the '***who, what, when, where, and how***' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (emphasis added), as well as the circumstances indicating fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

It was incumbent upon Plaintiff to come forward with evidence not only to support her own claim, but also to show that those same elements could be established on behalf of the putative class through collective evidence.  She has failed to carry that burden.  Consider:

### 1.   "Who" – Class Membership Cannot Be Established by Collective Evidence.

The proposed class definition includes all "purchasers."  There is no way to define from collective evidence who is a "purchaser."  Ocean Spray maintains no such records.  At most, third-party syndicated sales data will show that products were purchased, but they cannot match up purchase with

---

[4] Rule 9(b)'s requirements are an appropriate standard, because the requirements of Rule 9(b) apply to Plaintiff's state fraud claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

purchaser.  Indeed, Plaintiff is emblematic of the problem. She has no sales receipts for the Ocean Spray

products at issue, no cancelled checks, no credit card slips, no old packages, nothing but her memory.[5]

Cases involving retail purchases of food products are uniquely ill-suited to be tried on a class

wide basis because there is no collective evidence to identify who is in the class, so it is impossible to

determine class membership through any administrative process.  *See Solo v. Bausch & Lomb Inc.*, 2009

WL 4287706, at *7 (D.S.C. Sept. 25, 2009) (slip copy) (denying class certification, finding that

"determining the membership of plaintiffs' proposed class would require countless factual inquiries into

the individual circumstances of potential class members, most of whom will have long ago forgotten the

details relevant to plaintiffs' allegations.").  Instead, determining membership in this putative class

would require fact-intensive mini-trials, which outweighs any efficiency produced by certification.

Admittedly, before *Dukes*, some courts certified amorphous classes of retail purchasers like the

putative class here.  Respectfully, those courts spent little time or attention addressing whether the class

was sufficiently cohesive to permit the case to be tried in any reasonable fashion.  For example, in *Zeisel

v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. 2011), the Court granted a motion to certify a

class of retail purchasers of bags of walnuts that were allegedly misbranded because of omega-3 fatty

acid benefit claims.  In addressing ascertainability, the court observed that the definition was sufficiently

objective to permit a consumer to know whether he or she was a class member or not.  For the same

reason, and without further analysis, the court found that proceeding via a class action was superior.

Similarly, in *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), the Court

granted certification of a class of purchasers of certain soft drink products alleged to be deceptively

labeled as originating from New Mexico.  The Court found the definition was sufficiently objective to

communicate membership by tangible standards.  *Id.* at 377.  The court devoted a single conclusory

sentence to superiority, without analyzing how the case could be tried as a class action, nor how any trial

would be superior to – or, indeed, any different from – a succession of individual claims.

Courts in similar cases that performed the rigorous analysis Rule 23 requires routinely came to

---

[5] [Newman Decl. Ex. A, Major Depo., 61:18-62:10].  In fairness, Plaintiff does have a couple of labels
she cut off some bottles she purchased after she had met with counsel and had grown interested in
lending her name to this case.  [*Id.*, at 65:21-66:6].  Those single labels tell us nothing about how
frequently she bought or what price she paid for those bottles, let alone any others.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

opposite conclusions.  One leading example was *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).  In that case, plaintiff claimed that Snapple beverages were deceptively labeled as all-natural, even though they contained high fructose corn syrup.  Plaintiff sought to certify a class and to recover the premium allegedly paid as a result of the all-natural message.   The court denied certification for reasons that apply with equal force here.  First, the court doubted that plaintiffs could satisfy the predominance requirement, which requires the court to consider "whether the putative class members 'could establish each of the elements of [their] claim[s] . . . using common evidence."  *Id.* at *5, *quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006).  The court noted that "[t]he predominance requirement is met only 'if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'"  *Id.*, quoting *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010).  In *Weiner*, plaintiffs had no receipts or evidence other than their respective memories to establish how much product they bought, where they bought it, or how much they had paid.  The court also had reservations that the class could prove deception or materiality by collective evidence.  *Id.* at *6, n.12.

Cases like *Weiner* demonstrate the difficulty consumer retail purchase cases had passing a true rigorous analysis even before the Supreme Court's decision in *Dukes*.  After *Dukes*, it is questionable that cases like *Zeisel* and *Chavez* could come out the same way, because they did not consider whether on even the basic issue of class membership, the cases could be tried on collective evidence.  Courts recognize that consumer fraud cases, even against a single retailer, pose individual issues that preclude finding that predominance is met.  *See Howard v. Gap, Inc.*, 2009 WL 3571984, at *5 (N.D. Cal. Oct. 29, 2009) (slip copy) (denying class certification because "[t]here is no common method of proof. . . . Each class member would have his or her own individual story to tell.")  Those same inquiries would have to be done at every retailer that sold any of the Ocean Spray products at any time during the class period.  Plaintiff has offered no explanation how those facts could be proven by collective evidence.

The individualized reasons any consumer had for purchasing any of the Ocean Spray products and the unique circumstances of each shopping experience, contradict any claim of predominance. *Mahfood v. QVC, Inc.*, 2008 WL 5381088, at *4-5 (C.D. Cal. Sept. 22, 2008) (certification denied due

8

to "variation in individual purchasing experiences"). *See also Kotteras v. Whole Foods Market, Inc.,* 281 F.R.D. 16, 25 (D.D.C. 2012) (where purchasing evidence differs from person to person, it is impossible to establish widespread injury).

In short, certainly post *Dukes*, Rule 23 demands more than a clear and objective class definition. It requires cohesion among the class, and, at a minimum, suggests that the basic issue of class membership be demonstrated by collective proof. That plainly is not met here.

## 2. **"What" – The Actual Products Purchased, and Their Label Contents, Cannot Be Established by Collective Evidence.**

For many of the same reasons, the "what" cannot be established by collective proof. This is an especially chronic problem because Plaintiff is attempting to certify a single class of purchasers of all (or presumably any) of 5 separate and distinct product lines. Each product line had its own unique label, and each separate product within each line had its own unique label. The labels changed from time to time, such that without an individualized showing of the actual package each class member bought, it is effectively impossible to evaluate the merits of the claim.

For example, Plaintiff claims she purchased Ocean Spray's 100% Juice Cranberry & Pomegranate Flavored Blend changed during the class period. She may also have purchased 100% Juice Cranberry blend as well, but she could not recall for certain. The label on the 100% Juice line of products changed multiple times in the past four years, including most recently a change to address one of the alleged deficiencies Plaintiff complains about and added language "not a low calorie food, see nutrition facts panel for information about sugar and calories" to the 100% Juice products that were labeled "no sugar added." [Declaration of Larissa Irrera at ¶6.][6] The former labels were not pulled from shelves, so at unknown numbers of retailers, for unknown periods of time, purchasers could have selected either or both labels. Without the actual label, it is impossible for any purchaser to establish

---

[6] Products with this new label were introduced into stores on a rolling basis beginning in late 2012. Thus, they sat on many store shelves side by side with other products whose labels were not changed. Nor did the wholesale price change. Early market data indicate that the label change has had no discernible negative impact on sales. Thus, to the extent real market data show any trend, they are inconsistent with Plaintiff's assertions that the old label gave any pricing power to Ocean Spray, or made consumers more likely to buy than if the product were labeled as Plaintiff insists. Moreover, Ocean Spray's label change moots any basis for injunctive relief to this label issue.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

1   which label was on any bottle she bought.

2       Plaintiff's claim on the Blueberry Juice Cocktail represents another example of the problems

3   inherent in trying to certify a class based upon challenges to alleged generic "misbranding" claims.

4   Plaintiff claims she purchased Ocean Spray Blueberry Juice cocktail. She challenges the statement on

5   the rear panel that reads, in its entirety:

6       Hello. We're the family of Ocean Spray growers, farming the finest fruit for over 75
        years. If you're like us, you love the taste of juicy, fresh-picked blueberries. But did you
7       know that this native North American 'superfruit' is packed with nutrients? That plus
        our Ocean Spray juice know-how and you've got a one-of-a-kind delicious flavor with all
8       the goodness only nature provides. We hope you'll feel as good about drinking our juice
        as we feel about making it. Enjoy in good health!
9
        'Superfruit' is a name you really have to live up to! For starters, blueberries are loaded
10      with antioxidants – every glass of this juice gives you your daily dose of Vitamin C to
        help strengthen your immune system. Of course it's naturally sweetened with no
11      artificial colors or flavors. We think this is the kind of delicious, nutritious juice where a
        superfruit feels right at home.
12

13  [Complaint, at 157]. Plaintiff challenges certain of these statements as "unauthorized nutrient content

14  claims," even though, in context, the statements refer to blueberries, not the juice in the bottle. [*Id*. at

15  85.] This content is unique to the Blueberry Juice Cocktail, and has no applicability to any other

16  products within the same line, yet Plaintiff lumps them all together.

17      These are problems created by Plaintiff's Complaint, not dreamed up by Ocean Spray. The

18  Complaint identifies as part of her class definition "All persons in the State of California who, within the

19  last four years, purchased any of Defendants' products . . .(4) represented to contain or be a source of an

20  antioxidant or nutrient for which no RDI exists or which is present in the food at less than 10% DV

21  threshold." [*Id*. at 166.] Plaintiff's class certification motion seeks to certify a class comprised, at least

22  in part, of consumers who bought "juice drinks (in any product's line of flavors, e.g., Blueberry Juice

23  cocktail)," without linking any of those products to any alleged misbranding issues, and without any

24  allegation that Plaintiff ever bought any of the other products.

25      The result of Plaintiff's buffet pleading is a class definition largely divorced from Plaintiff's own

26  purchases. It is a mish mash of products and theories jumbled together under one caption. When Ocean

27  Spray answered the Complaint rather than filing a motion to dismiss, it was mindful of this Court's

28  views expressed in *Khasin v. The Hershey Co*., No. 5:12-CV-01862, Dkt. 45 (N.D. Cal. Nov. 9, 2012)

that "any concerns about the differences among products are better addressed at the class certification stage rather than at the present stage." [11/9/12 Order, Dkt. 45, at 15:23-24.] [7]  Ocean Spray presumed Plaintiff (or at least her counsel, who were also counsel in *Hershey*) would be similarly mindful and would address the issue in the class certification motion.  That has not happened.  And now, by virtue of the mish mash, the only thing in "common" among the entire putative class is that they bought some beverage that said "Ocean Spray" on the label; the rest is left to be figured out somehow at trial.

Plaintiff's reliance on *Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011) is misplaced.  In that case, an allegedly misleading digestive health benefits claim in the labeling and advertising of a single line of Yoplait yogurts created a common issue upon which the court found commonality had been met.  This case presents entirely different facts.  Plaintiff's claims involve neither a single line of products nor a single alleged type of misleading claim.  Plaintiff instead claims a hodgepodge of different alleged misrepresentations on the labels on somewhere between four and six widely varied Ocean Spray product lines and between 4 and three dozen actual products.  The violations are also varied, where on some products Plaintiff complains of "no added sugar" claims on a variety of 100% Juice products; for others references to antioxidants and nutrients on the back label of a fruit juice cocktail; and for still other products takes issue with Ocean Spray's claims concerning the absence of artificial flavors, colors, or preservatives.  Unlike *Johnson*, the proposed single class shares no common issue concerning either the identity of products purchased or the alleged labeling infractions.

### 3.   "When" – The Timing of Purchases Cannot Be Shown by Collective Evidence.

For many of the same reasons noted above, the timing of purchases matters, not only for statute of limitation purposes, but also for establishing label content.  The statute of limitation issue is particularly important, because some of the products at issue have been sold in California for much

---

[7] Courts in this District dealing with food and beverage class actions brought by counsel for Plaintiff have subsequently determined that these pleading problems are better dealt with at the pleading stage, and have granted motions to dismiss where the plaintiffs in those actions cannot satisfy the requirements of Rule 9(b).  *See, e.g.*, *Wilson and Campen v. Frito-Lay North America, Inc.*, CV 12-1586-SC, Dkt. 46, at 9 (N.D. Cal. Apr. 1, 2013) (citing *Jones v. Conagra Foods, Inc.*, 2012 WL 6569393, at *11 (N.D. Cal. Dec. 17, 2012) (dismissing plaintiffs' claims against defendant for failure to meet Rule 9(b)'s specificity standard because plaintiffs did not provide details about "exactly which products they purchased"); *Brazil v. Dole Food Company, Inc.*, CV 12-01831-LHK, Dkt. 59 (N.D. Cal. Mar. 25, 2013) (same).

longer than the past 4 years.  Plaintiff's proposed class is overbroad in that it potentially includes members whose claims are barred by applicable statutes of limitations. *See* Cal. Bus. & Prof. Code §17208; Cal. Civ. Code §1783; Cal. Code Civ. Pro. §335.  There is no way to establish dates of purchase by collective proof.

> **4.**      **"Where" – The Location of Purchases Cannot Be Shown By Collective Evidence.**

Plaintiff's theory is that she and other putative class members were harmed because they paid a premium for Ocean Spray's products.  By definition, a "premium" implies a comparison to other products.  To isolate any "premium" associated with misbranding, the comparison product must be correctly labeled (at least as Plaintiff defines it).  Such elements are key to Plaintiff's remedies and are addressed below.  For now, it is sufficient to note that collective evidence cannot recreate the shelf sets or pricing that putative class members found at each of the countless retail stores throughout California

> **5.**      **"Why" – Materiality and Reliance Cannot Be Shown By Collective Evidence.**

In order to state a claim under the UCL or CLRA, Plaintiff must show that the allegedly deceptive label elements were material to a reasonable person's purchasing decision, and that the deception was at least a reason why she bought the product in question.  These elements cannot be shown by collective evidence.  Plaintiff herself is a case in point.  She was not deceived or even swayed by the challenged content on any of the labels in question.  She simply bought the lowest price item that appealed to her.  For those she tried and did not like, nothing the labels said or could have said would have caused her to buy more.  Ocean Spray suspects that many other purchasers behaved the same way, and paid no attention to the label issues the Complaint calls in to question.

Ms. Major's testimony further establishes that although "labels matter," not everything on labels matters equally.  More importantly, the label elements her lawyers have called into question did not matter to her at all.  For each product in question, the labels did their job in communicating the information important to her.  Label contents for things like reduced calorie and no sugar added did not confuse, deceive, mislead or anything other than adequately inform her.  However, as to the issues being complained about – such as whether a 100% juice product with no added sugar was a reduced calorie product or not – she was not confused.  Nor were the challenged label issues important to her.  Price was the driving factor, and she routinely bought products priced lower than Ocean Spray's.

As further evidence that the challenged elements do not matter, products Ms. Major bought before, and buys now, instead of Ocean Spray, have some of the same alleged label deficiencies. She buys juices and juice drinks, including store brands, from retailers such as Safeway and Costco. Thus, it merits reviewing the labels on these products to explore whether Plaintiff faces unique defenses on the issues of materiality and causation.

Ms. Major has two complaints about Ocean Spray's 100% Juice label. It contains a truthful message that the product contains "no added sugar" and that it contains "no artificial colors, flavors, or preservatives." According to Ms. Major – or, more accurately, her paid expert Mr. Scarborough[8] – Ocean Spray could not use the "no sugar added" message at all because its 100% juice product has as an ingredient fruit juice concentrate. She (or he) also claims that the use of "no added sugar" messaging must also be accompanied by the disclaimer "not a low calorie food, see nutrition facts panel for more information on sugar and calorie content" in order for the label to comply with 21 C.F.R. section 101.60(c)(2)(v). According to the Complaint, Ms. Major "did not know, and had no reason to know, the Defendant's products were misbranded as set forth herein, ***and would not have bought the products had she known the truth about them***." [Complaint, at 161 (emphasis added).]

Plaintiff's own testimony and discovery responses show these allegations to be completely meritless. During portions of the class period, private label 100% juice and juice drinks/cocktails from Costco (Kirkland brand) and Safeway (Safeway Kitchens brand) had the very same label issues she complains about on Ocean Spray's labels. The labels of Costco's Kirkland 100% juices including the Cranberry Raspberry 100% Juice Blend that Plaintiff purchases, all declare that the product has "No Sugar Added" without any calorie content disclaimer. [Newman Decl. Exh. D]. The labels of Safeway Kitchens brand juices all declare that the products contain "no artificial flavors, preservatives, or

_____

[8] A note about Mr. Scarborough is in order. According to his declaration, he formerly served as Directory, Officer of Food Labeling. The FDA, as his former employer, is on record objecting to its former employees offering testimony about what the FDA's "position" is or has been with respect to labeling issues. [*See* concurrently filed Request for Judicial Notice, Ex. 1] In reality, if the FDA has an official "position" on an issue, then it has been stated and Mr. Scarborough's testimony is unnecessary. The Court can interpret the regulation, giving due deference to that official agency position. Similarly, his testimony on legal issues, such as officially promulgated regulations, is inappropriate. His views about unstated policy issues are irrelevant. [Objections to the Declarations of Mr. Scarborough and Dr. Julie Caswell are filed concurrently herewith.]

colorings" and like Ocean Spray's products contain the ingredients ascorbic acid, citric acid, fumaric acid, and sodium citrate. [*Id.* at Exhs. H, I, J, K and L].

Similarly, Ms. Major said she bought Langers brand products instead of Ocean Spray when she bought name brands, but she could not specify which ones. The specific products do not matter, because Langers juice products have the same label issues. For example, the label on Langers Cranberry Plus and 100% Grape Juice declare that the products have "NO SUGAR ADDED" and do not have any disclaimer about the products' calories. [*Id.* at Exhs. M, N]. Langers juice drinks and cocktails also all have the same "no artificial colors and preservatives" messages, yet contain ascorbic acid and citric acid.[9] [*Id.* at Exhs. E, F, and G]. The takeaway is simple: the label issues Ms. Major complains about were not material to ***her*** purchasing decisions. The label issues also did not cause ***her*** to buy Ocean Spray products. And now, armed with her lawyer's interpretation of the regulations, the only change in her behavior is to buy other products with the same "misbranding" issues.

Ms. Major's price-centric reasons for choosing which products to buy are so clear that it is little wonder her declaration was not offered in support of this motion. Ordinarily, plaintiffs offer survey evidence or some other form of consumer research in order to establish the essential elements of materiality, reliance and causation. Indeed, cases generally hold that such evidence is required to show that advertising or other forms of consumer communication are both misleading and material. *E.g. Haskell v. Time, Inc.,* 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) (plaintiff must furnish evidence that a statistically significant number of consumers were deceived); *Heighly v. JC Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003) (a few examples of anecdotal evidence are not sufficient to show consumer deception). *See also Ries v. Arizona Bev. USA LLC*, 2013 WL ____, No. 10-01139-RS (N.D. Cal. March 28, 2013) (granting summary judgment and decertifying class in labeling case where plaintiff produced no survey evidence that labels deceived consumers).

Admittedly, proof by statistical evidence in class actions is viewed with greater skepticism post-*Dukes*. *See Dukes*, 131 S.Ct. at 2561 (statistical evidence cannot override defendant's right to raise and prove affirmative defenses). But here, the only "evidence" Plaintiff offers is the declaration of Dr.

---

[9] Ocean Spray hastens to add it does not believe these labeling issues amount to misbranding on its labels or those of competitors. These examples are offered to show Plaintiff's allegations are baseless.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS

*CV-12-03067-EJD (HRL)*

1   Caswell, who:  (i) has never been an expert in litigation on any issue; (ii) has never spoken to Plaintiff;

2   (iii) has done no consumer research of any kind on the labels at issue; and (iv) has done no actual

3   consumer perception research of any kind.  Nevertheless, with the bravado possessed only by

4   academicians who have never faced a *Daubert* challenge, she opines that every bit of information on

5   every label on every consumer product is material to 98-99% of consumers. [Newman Decl., Exh B.,

6   Caswell Depo. at 116:7-117:1].  These numbers are not backed up by research, or calculated according

7   to any equation, or expressed according to any recognizable law of statistics so as to yield either an error

8   rate or confidence level.  Indeed, the only way to test her conclusions is to ask her, and she will parrot

9   back the same unsupported palaver.  This is proof by *ipse dixit* – which is to say, no proof at all.  The

10  musings of a "label whisperer," however well educated, cannot stand up to Rule 23 rigorous analysis.

11          Setting aside the deficiencies in Dr. Caswell's declaration, California law permits an inference of

12  class-wide reliance, but only where all class members were exposed to the same, uniform

13  misrepresentation.  *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 851 (2009)

14  (affirming denial of certification where representations varied, noting that a class-wide inference of

15  reliance arises only "*when the same material misrepresentations have actually been communicated to*

16  *each member of a class*") (emphasis in original).  As noted above, however, there were different labels

17  at different times on the products Plaintiff bought, not to mention the others she seeks to rope in through

18  her class definition.  And even then, the presumption is rebuttable.  Ms. Major's testimony highlights

19  why materiality and reliance cannot presumed but rather must be proven by showing the purchases of

20  other putative class members.[10]  These facts cannot be proven by collective evidence either.

21          A UCL plaintiff seeking restitution also must show he was exposed to a false or misleading

22

23  [10] This was the point made in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2nd Cir. 2008)
    (partially abrogated on other grounds):  "But proof of misrepresentation – even widespread and uniform
24  misrepresentation – only satisfies half of the equation; the other half, reliance on the misrepresentation,
    cannot be the subject of general proof.  Individualized proof is necessary to overcome the possibility
25  that a member of the purported class purchased Lights for some reason other than the belief that Lights
    were a healthier alternative – for example, if a Lights smoker was unaware of that representation,
26  preferred the taste of Lights, or chose Lights as an expression of personal style." *Id.,* at 223.
    Individualized reliance as cause of alleged damages is an essential element of each of Plaintiff's causes
27  of action where, as here, she seeks monetary relief.  *In re Facebook, Inc. PPC Advertising Litig.*, 282
    F.R.D. 446, 459 (N.D. Cal. 2012); *Akkerman v. Mecta Corp.,* 152 Cal.App.4th 1094, 1102 (2007).

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

statement.  *See Pfizer, Inc., v. Superior Court*, 182 Cal. App. 4th 622, 632-633 (2010); *Cohen v. DirecTV*, 178 Cal. App. 4th 966, 980 (2009) (UCL does not authorize relief "on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice"). Where different class members would have been exposed to different allegedly false or misleading stimuli, courts deny certification of UCL claims since exposure cannot be resolved on a class-wide basis.  *See Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 926-928 (2010) (affirming order denying certification of UCL claim based on alleged mislabeling of clothing as "made in the U.S." on Target's website, where a majority of class members did not see the false place-of-manufacture information on the website); *Kaldenbach*, 178 Cal. App. 4th, at 848-849 (affirming denial of class certification in a UCL action because of individualized issues as to "what materials, disclosures, representations, and explanations were given to any given purchaser").  If class members were exposed to different labels, exposure cannot be shown on a class-wide basis and certification is inappropriate.  *Sevidal*, 189 Cal. App. 4th at 928; *Campion v. Old Republic Home Protection Co.*, 272 F.R.D. 517, 537 (S.D. Cal. 2011) (denying motion to certify UCL and CLRA class where "the proposed class members may have seen some, all or none of these statements prior to the purchase of their home warranty plans due to the varying ways in which they acquired their plans"); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011).

**C.**     **Questions of Restitution and Damages are also Subject to Individualized Inquiry and Cannot be Established by Representative Evidence.**

Plaintiff fails to also demonstrate how a remedy can be shown by collective evidence.  Plaintiff tries to make that showing through Dr. Capps' declaration wherein Dr. Capps offers three possible methods by which he might go about showing damages through what he believes would be collective evidence. However, Dr. Capps has spent but 25 hours working in this case and has not performed any actual analyses or computations.  [Newman Decl., Exh. C, Capps Depo. at 11:14-22; 25:2-19; 33:24-34:6; 47:5-20 108:1-4].  His thoughts are at best theoretical and his methods are neither sufficiently well developed, nor likely ever to be developed, to establish a remedy according to Rule 23 standards.

The first and most straightforward proposed remedy is full reimbursement of the purchase price.  However, a full reimbursement remedy turns the UCL and CLRA statutes into "get something for nothing" laws, which is not proper.  *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593

1  (2008).  The putative class members bought and consumed the products at issue over a period of years

2  without injury or complaint.  Leaving aside Plaintiff's invented concept of "legally worthless," each

3  product delivered benefits of hydration, vitamins and carbohydrates necessary for energy, so it was not

4  "worthless" in any economic sense.  Put another way, even under Plaintiff's theory, the same exact

5  products with slightly different labels would have been perfectly fine and, presumably, "worth" the

6  same price.  Indeed, we now know from her testimony that Ms. Major bought products from other

7  manufacturers that had the same label issues. So in her case, the "slightly different" label meant merely

8  a different manufacturer's name.  In any event, there was no intrinsic flaw or defect with the products

9  themselves, so even if there were any merit to the "legally worthless" concept, it would not apply here.[11]

10         Restitution also presents the most individualized issue, and cannot be demonstrated by collective

11  proof.  Dr. Capps concedes that some putative class members likely used coupons, and so their actual

12  out-of-pocket charge at the register would be different.  Further, Dr. Capps assumes (without evidence)

13  that all retail sales of the products at issue were captured by scan data available to him or to Ocean

14  Spray.  But even assuming perfect and complete scan data, all it shows is that products were sold.  It

15  does not say who brought the products.  Restitution requires matching purchase with purchaser, or else

16  the remedy is not restitution, but rather some estimated average price that necessarily would

17  overcompensate some and undercompensate others.  Such a remedy based on "average" retail prices has

18  been condemned as unauthorized under Rule 23, because it "would inevitably alter defendants'

19  substantive right to pay damages reflective of their actual liability."  *See McLaughlin*, 522 F.3d at 231.

20  Register price has a nice, collective sound, but Dr. Capps effectively admits that register price

21  (excluding coupon users) applies only to purchasers in the same store on the same day.  So, applying

22

---

23  [11] Plaintiff has invented the idea of "legally worthless" to try to shoehorn her way into the court's
opinion in *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010).  That case involved the

24  over-the-counter sale of products containing anabolic steroids (Class III controlled substances) that were
illegal to sell or possess without a prescription.  There, the plaintiff, on behalf of the class, sought

25  restitution as a remedy, in part because he could plausibly claim he would not have bought the products
had he known it could subject him to criminal liability.  Plaintiff here, having consumed the products

26  without injury, complaint, or threat of criminal liability, cannot credibly make the same claim.  As the
court noted in *Mason v. Coca-Cola Co.,* 774 F. Supp. 2d 699, 699-701 (D.N.J. 2011), "**not every**

27  **regulatory violation amounts to an act of consumer fraud.**  It is simply not plausible that consumers
would be aware of FDA regulations regarding 'nutrient content." *Id.* at 705 n.4 (emphasis added).

28

---

17

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

1  register price, the analysis would potentially vary at every store, each day of the class period. Dr. Capps'

2  first remedy fails under *Comcast Corp. v. Behrend*, because it simply is not "susceptible of measurement

3  across the entire class for Rule 23(b)(3) purposes." *Comcast*, 133 S. Ct. 1426, 1429 (2013).

4  　　　Dr. Capps's second model is a "benefit of the bargain" analysis that compares the selling prices

5  of Ocean Spray's challenged products to some unidentified "similar" products.  In order to isolate the

6  alleged misleading premium, however, Dr. Capps would have to identify a properly labeled replacement

7  product for each of the challenged products.  Then the replacement products would also have to be

8  lower priced, and there would have to be one available at every retail store where the Ocean Spray

9  products were sold for the entire class period.  If there is such a replacement product for each of the

10  products at issue neither Dr. Capps nor Plaintiff has identified it, and as established by his recent

11  deposition testimony, Dr. Capps has not even looked for one.  [Newman Decl., Exh. C, Capps Depo. at

12  44:23-46:4].  More likely, because any given retailer's shelf set (not to mention prices) changes

13  frequently over time, identifying replacements would be an impossible task, and Dr. Capps' "but for"

14  world would be impossible to create.  In any event, his perfunctory declaration falls far short of the level

15  required for his methodology to stand-up to the rigorous analysis required by Rule 23.[12]

16  　　　Finally, Dr. Capps falls back on every economist's favorite, the regression analysis.  He merely

17  assumes, without explanation or elaboration, that enough variables could be isolated through regression

18  analysis to come up with some damages estimate.  It is doubtful that such an analysis could ever be

19  done, because multiple factors play into retail prices.  *See McLaughlin*, 522 F.3d at 230 ("And indeed,

---

[12] This was among the many problems identified in the *Weiner v. Snapple* case.  Just like Dr. Capps, plaintiff's expert tried to skate through by assuring the court that once he actually undertook his work he really could isolate the premium through a methodology that would pass muster.  Respectfully, Judge Cote got it right in determining that such a bare bones declaration, which leaves all the real work to be done after class certification, is not a sufficient basis for certifying a class.

Plaintiff's showing is so deficient it brings to mind Judge Posner's comments in affirming decertification of a class that also lacked a proper remedy methodology:  "[Plaintiffs] must think that like most class action suits this one would not be tried – that if we ordered a class or classes certified, DirectSat would settle.  That may be a realistic conjecture, but class counsel cannot be permitted to force a settlement by refusing to agree to a reasonable method of trial should settlement negotiations fail."  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013).  Here, as there, Dr. Capps' effort was little more than a box to be checked on the way to class certification.  If such "trust me, I can do it" approaches are sufficient to obtain class certification, then the required "rigorous analysis" has lost all semblance of rigor.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

here, as plaintiff's expert concedes, a number of exogenous variables bear on cigarette price, including 'rates of consumption, income levels of smokers, population, taxes, advertising expenditures, production costs, and plaintiffs' knowledge of health risks.")[13]   Marketplace realities strongly suggest that to attempt to isolate the portion of the ***retail price*** (which Ocean Spray does not control) attributable to the challenged label elements would be futile, because products with and without those label elements (both Ocean Spray and competitors' products) sat side by side on shelf with no change in price.[14]

Each of his proposed methodologies is entirely theoretical, because he has not done any of the actual work.  Dr. Capps assumes the result of his analysis and presents as foregone conclusions the very propositions he has not yet tested or even defined.  Conjecture about work that has not been done based on data Plaintiff does not even have is not evidence.  Dr. Capps' "trust me, it can work" approach is purely speculative.  The Court should not take a "wait and see approach" to class certification on the assurance that work done for Plaintiff in the future will establish proof that presently does not exist.[15]

---

[13] Dr. Capps' declaration likewise acknowledges a number or variables, such as national and regional sales, national and regional prices, promotional expenditures, personal income of consumers, population, prices of complimentary products and food prices generally.  [Capps Amended Decl. ¶ 14.] Dr. Capps has not performed any analysis to see whether, amidst all this noise, any premium for the challenged label elements could be isolated.

[14] A similar issue was present in *McLaughlin*, in which the plaintiffs claimed that misrepresenting the health benefits of light cigarettes had allowed the defendants to charge higher prices than they could have had the public known light cigarettes were no healthier than other cigarettes.  The court noted that a well-publicized report called Monograph 13 had come out that supported plaintiffs' views on the relative health benefits.  The court noted that this information undermined their claim that true information would have impacted retail prices:  "Furthermore, if plaintiffs' theory of a health-driven preference for Lights were correct, one would have expected demand to drop following the publication of Monograph 13 as people returned to smoking regular cigarettes or quit smoking altogether and, correspondingly, prices to fall.  But nothing of the sort happened; the market did not shift appreciably following the publication of Monograph 13." 522 F.3d at 230.  As shown by the Irrera Declaration, the label change on Ocean Spray's 100% Juice line to include the disclaimer had no negative impact on prices or sales.  Thus, Plaintiff has failed to present any evidence that Dr. Capps' regression analysis either would produce the result he claims; in reality the conclusion is contrary to market data.

[15] Dr. Capps is no stranger to these criticisms of his work.  He offered similar evidence-free opinions in support of plaintiffs' motion for class certification in *Kotteras v. Whole Foods Markets, Inc.*, 281 F.R.D. 16, 25 (D.D.C. 2012).  The court denied class certification in part because "the proposed methodology of Plaintiffs' expert is too vague for the Court to rigorously analyze."  *Id.* at 1.  There, as here, Dr. Capps proposed to measure damages starting with register prices he derived from scanner data. There, as here, he proposed to perform a regression analysis that magically would control for all other factors that determine prices and then drill down to show injury to consumers.  There, as here, his output

19

*See, e.g., In re GPU Antitrust Litig.*, 253 F.R.D. 478, 505-06 (N.D. Cal. 2008) (denying certification motion that depended on "promises" by plaintiffs' experts that "that they will be able to formulate the appropriate analysis and prove both impact and damage once they obtain the necessary data"; "plaintiffs should be able to provide more than promises at this late stage of the litigation"); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977) (district courts "should not certify the class merely on the assurance of counsel that some solution will be found" for determining damages).

Even if Dr. Capps' work had been completed, his regression analysis would produce a legally invalid result. His declaration concedes this point by stating "Hence, with knowledge of the total sales associated with the purchase of Ocean Spray products over the past four years, to arrive at damages we would simply multiply total sales by this estimated percentage." [Capps Decl. at ¶14]. In other words, his regression analysis would, at most, produce a forbidden "fluid recovery" measure. And even if such a scheme were permitted for pooling damages (which it is not), Plaintiff has offered no trial plan for determining how such a pool would be distributed to would-be class members. Rather, individual claimants would have to come forward with their own purchase evidence to claim any individual share of a pool. Courts have recognized that "[r]oughly estimating the gross damages to the class as a whole and only subsequently allowing for processing of individual claims would inevitably alter defendants' substantive right to pay damages reflective of their actual liability. " *McLaughlin*, 522 F.3d at 230 (partially abrogated on other grounds by *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)). This type of allegation has even been called a violation of due process. *Id*. at 232, quoting *Newton v. Merrill Lynch, Pierce, Fenner and Smith*, 259 F.3d. 154, 191-92 (3d Cir. 2001) ("actual injury cannot be presumed, and defendants have the right to raise individual defenses against each class

---

would take the form of a gross aggregate figure that could then be distributed to class members according to some undefined scheme.

The *Whole Foods* court declined to take the bait for several reasons that apply equally here. First, Dr. Capps had "not yet performed a single regression, but he also could not tell the Court the precise analyses he intended to undertake." *Id*. at 26. The *Whole Foods* court determined that Capps' opinions amounted to little more than his "assurance to the Court that it intends a plan to meet the requirements" of Rule 23, which the Court found "insufficient." *Id*. quoting *In re Hydrogen Peroxide*, 552 F.3d 305 at 318 (2008). As constituted, Dr. Capps' proposed methodology was "not sufficiently developed to meet Plaintiffs' burden of showing that common questions predominate over individual ones, as required by Rule 23(b)(3)." *Id*.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS

*CV-12-03067-EJD (HRL)*

member").

None of Dr. Capps' methods passes muster under *Comcast*.  Even if he had actually done the work necessary to validate and demonstrate any of his three measures of damages, his methods would still fail.  *Weiner v. Snapple*, which challenged elements of Snapple beverage labels, addressed similar issues.  The Court in *Weiner* refused to certify the class for reasons present here:

> Even assuming, *arguendo*, that [the allegations that] Snapple's alleged misrepresentation was "consumer-oriented" and was "likely to mislead a reasonable consumer acting reasonably under the circumstances"—are susceptible to class-wide proof, plaintiffs have not proposed a suitable methodology for establishing the critical elements of causation and injury on a class-wide basis. Without a reliable methodology, plaintiffs have not shown that they could prove at trial using common evidence that putative class members in fact paid a premium for Snapple beverages as a result of the [] labeling. And since the issue of damages is bound up with the issue of injury in this case, plaintiffs have likewise failed to show how damages could be proven class-wide.  Because individualized inquiries as to causation, injury, and damages for each of the millions of putative class members would predominate over any issues of law or fact common to the class, plaintiffs' [] claim cannot be certified under Rule 23(b)(3).

*Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010).

## D.     Plaintiff Has Provided No Trial Plan And Fails To Demonstrate How This Case Could Be Tried On Collective Evidence.

Plaintiff's Motion focuses on clearing the bar of class certification without any regard for how a trial of her claims would actually look.  At the certification stage, however, Plaintiff needs to show that she has a feasible plan to establish through class-wide proof that the challenged labels were likely to confound "an appreciable number of reasonably prudent purchasers exercising ordinary care." *Badella,* 2011 WL 5358400, at *7 n.2.  Similarly, with respect to her CLRA claim, Plaintiff must show how generalized proof would be capable of establishing across the class that the challenged representations were "material" in the sense that "a reasonable man would attach importance to [their] existence or nonexistence in determining his choice of action." *Ticketmaster,* 655 F.3d at 1022 (inference of reliance arises only if material misrepresentations made to the entire class).

Plaintiff's case cannot be effectively tried as a class action because facts such as any individual's reliance on the allegedly offending label elements, an individual's purchase history, and the price any purchaser paid are subject to individualized inquiry.  Plaintiff fails to offer any suggestion for how this

21

case could be effectively tried or how the Court could manage myriad individualized inquiries.

It is improper to certify a class where Plaintiff has provided no evidence how the significant issues can be tried on collective evidence. Absent common proof, these key elements must be proved individually, and Plaintiff cannot satisfy the predominance requirement, as numerous cases decided in the last year alone make clear. *Mazza v. American Honda Motor Co.,* 666 F.3d 581, 596 (9th Cir. 2012) ("'a consumer who was never exposed to an alleged false or misleading advertising ... campaign' [cannot] recover damages under California's UCL"); *Edwards v. Ford Motor Co.,* 2012 WL 2866424, at *8 (S.D. Cal. June 12, 2012) ("where individual issues as to materiality predominate, the record will not permit such an inference . . . 'If the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action.'"); *O'Shea v. Epson Am., Inc.*, 2011 WL 4352458, at *11-12 (C.D. Cal. Sept. 19, 2011) (individualized issues of causation and injury predominated where not all class members were exposed to the alleged misrepresentation at the time of purchase).

Numerous individual issues also apply to remedies. Restitution must be "based on a specific amount found owing," and "must be supported by substantial evidence." *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal. App. 4th 663, 698-700 (2006). Where each class member paid a different amount and bought different quantities on numerous occasions over a period of time, the thousands of individualized inquiries necessary to compute individual damages would predominate over any possible common questions relating to liability. *See In re Google Adwords,* 2012 WL 28068, at *14 (N.D. Cal. Jan. 5, 2012). Any nonrestitutionary disgorgement, such as disgorgement of all profits, is not available under California law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) (nonrestitutionary disgorgement not allowed). Courts have rejected damages methodologies that "would award full restitution of all fees paid... without taking into account the benefits . . . received," and have held that "benefits . . . would need to be individually accounted for in any restitution calculation." *Google Adwords,* 2012 WL 28068, at *15. Attempting to calculate damages based on what value a purchaser received or would have paid for the product without the alleged labeling misrepresentations would add layers of fact-intensive, individual inquiry as it would "involve qualitative as well as quantitative analysis." *Harris v. Vector Mktg. Corp.,* 753 F. Supp. 2d 996, 1022-1023 (N.D. Cal. 2010);

22

*Mazur v. eBay, Inc.*, 257 F.R.D. 563, 572 (N.D. Cal. 2009) (declining to certify CLRA and UCL claims where figuring damages "would require establishing an appropriate amount that each class member should have paid for their items," an "impossible" task).

### E.   Plaintiff Has Not Demonstrated The Superiority Of Trying The Case As A Class Action.

A key consideration in evaluating superiority is whether the litigation is manageable.  Fed. R. Civ. P. 23(b)(3)(D).  Manageability requires the court to assess the "whole range of practical problems that" may affect adjudication of the case.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). Where such practical problems exist, the class may be denied.  In *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 214 F.R.D. 614, 616 (W.D. Wash. 2003) ("PPA"), the court noted that determining class membership would be unmanageable because there was likely to be no reliable proof of purchase.  *Id*. at 617.  Thus, a class action was not superior.  *Id*.

Here, Plaintiff has similarly failed to prove that a class action would be superior.  As discussed above, a great number of issues in this case will require individual resolution.  As in *PPA*, purchasers of the Ocean Spray products at issue do not keep records of their purchases.  Plaintiff, for example, has no documentary evidence of her own alleged purchases.  Ocean Spray is unable to identify who bought at retail.  Thus, the Court would have to make separate inquiries to determine who is in the class.  Given the potential size of the class (untold thousands of purchasers throughout the nation's most populous state), this could result in an unfathomably huge investment of judicial resources.[16]

### F.   Plaintiff Is Neither "Typical" Nor "Adequate" As Class Representative.

Due process requires that absent class members be afforded adequate representation because they will be bound by the entry of a judgment.  *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) If a Plaintiff is not a typical representative, she also is not an adequate representative.  *Fine v. Conagra Foods, Inc.*, 2010 WL 3632469, at *4 (C.D. Cal. Aug. 26, 2010).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."  *Wolin*

---

[16] These mini-trials would be necessary for each alleged individual purchaser of the several Ocean Spray products at issue, an incredible drain on judicial resources.  This does not even factor in the impact of similar inquiries in the dozens of similar cases filed against other food and beverage manufacturers filed in this District in the last twelve months by counsel for Plaintiff.

*v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Courts will not deem a named plaintiff typical when he or she sues over a line of products with varying representations but did not buy every product.  *See Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 665 (C.D. Cal. 2009) (no typicality because "Dannon ha[d] made different health benefit claims" regarding various products); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 234 (S.D.N.Y. 2002) (no typicality where plaintiff bought two of sixty products).

Typicality is also lacking if a class representative's claim is subject to unique defenses.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508-509 (9th Cir. 1992).  This rule avoids the problem created when a named plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."  *Hanon*, 976 F.3d at 508.  As noted above, Plaintiff did not pay any premium for Ocean Spray products, and was not deceived by the Ocean Spray labels on those things that mattered to her.  As such, she is subject to unique defenses of lack of materiality and causation.

## G.    Plaintiff's Alternative Proposal of Rule 23(b)(2) Certification Fails Where She Predominantly Seeks Monetary Relief.

Certification under Rule 23(b)(2) is unavailable if the plaintiff seeks "monetary relief [that] is not incidental to the injunctive or declaratory relief."  *Dukes*, 131 S. Ct. at 2557; *see also Wilcox Development Co. v. First Interstate Bank Oregon, N.A.*, 97 F.R.D. 440, 446 (D. Ore. 1983) (denying certification where "[w]hile plaintiffs do seek an injunction, money damages represent the major portion of the relief sought.").  Simply asserting that the primary relief sought is injunctive rather than monetary is of no import.[17]  Rather, if the injunctive relief is simply to facilitate monetary damages, the 23(b)(2) class fails.  *In Re Paxil Litigation*, 218 F.R.D. 242, 247 (C.D. Cal. 2003) ("Stated another way, the monetary damages must be secondary to the primary claim for injunctive or declaratory relief."); *Mahfood*, 2008 WL 5381088, at *4 (denying 23(b)(2) certification where prayer for relief repeatedly requested actual damages, rescission, restitution and even disgorgement of profits).

---

[17] It bears noting here that Plaintiffs have stated their intent to file (and by the time for the hearing presumably will have filed) an amended complaint to seek monetary damages under the CLRA.  This is hardly incidental to injunctive relief.

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS
*CV-12-03067-EJD (HRL)*

Here, Plaintiff's request for injunctive relief is nothing more than a declaration that Ocean Spray is in fact liable and a tactic to recover attorneys' fees as provided by section 17200. Plaintiff's request for certification under Rule 23(b)(2) fails because it is unnecessary to proceed as a class in order to obtain such relief, if appropriate. "[T]he vast majority of courts" evaluating Rule 23(b)(2) class certification consider the necessity for class relief, and "the need requirement now seems well-accepted as an appropriate consideration when certifying a Rule 23(b)(2) action." 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1785.2 (3d ed.); *see also Sokol v. New United Mfg., Inc.*, 1999 WL 1136683, at *6 (N.D. Cal. Sept. 20, 1999) ("the Court declines to certify a class based only on these two policies because the class vehicle is not necessary to obtain the relief sought."); *M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 286 F.R.D. 510, 518 (S.D. Ala. 2012) (collecting case law and concluding "Where the members of the proposed class would benefit from the relief sought by the individual plaintiffs even if no class were certified, those courts often find that the burdens outweigh the benefits and that class certification is properly denied as inappropriate.") Plaintiff's individual claims under the UCL and CLRA already seek injunctive relief to stop Ocean Spray from selling the allegedly mislabeled products. That relief duplicates any Rule 23(b)(2) injunctive relief. Moreover, injunctive relief would be nothing more than a forbidden private action to enforce label infractions, placing the Court, rather than the FDA, in the position of regulating label content and changes. Plaintiff ultimately seeks monetary relief as to each class member (however unprovable). There is no precedent for such an injunction, and that is why Plaintiff gets there only as an afterthought.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Ocean Spray respectfully requests that the Court deny Plaintiff's second Motion for Class Certification.

DATED:  May 3, 2013                    GREENBERG TRAURIG, LLP


By:   */s/ Rick L. Shackelford*
                                       Rick L. Shackelford
                                       Attorneys for Defendant
                                       Ocean Spray Cranberries, Inc.

LA 130840749v8

25

DEFENDANT OCEAN SPRAY CRANBERRIES OPPOSITION TO MOTION TO CERTIFY CLASS

*CV-12-03067-EJD (HRL)*